[Cite as *In re B.K.F.*, 2016-Ohio-5474.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

IN THE MATTER OF:                    :

      B.K.F.                           :                CASE NO.    CA2016-04-078

                           :                O P I N I O N
                                               8/22/2016

                           :

                           :

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2013-0476

Tracy Washington, Legal Aid Society of Southwest Ohio, LLC, 10 Journal Square, 3rd Floor, Hamilton, Ohio 45011, guardian ad litem

Heather Felerski, P.O. Box 181342, Fairfield, Ohio 45018, for appellant, B.F.

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee, Butler County Department of Job & Family Services

**PIPER, P.J.**

{¶ 1}   Appellant, the father of B.F., appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of the child to a children services agency.

{¶ 2}   Three days after B.F. was born, the children services division of the Butler

County Department of Job and Family Services ("agency") filed a complaint allegi that the child was abused and dependent. The complaint indicated that B.F. and his mother both tested positive for cocaine at the time of the child's birth and it was reported that the father also used cocaine. The complaint further alleged that there were domestic violence issues between the parents. The father had a domestic violence conviction in 2002, was charged with drug offenses in 2000 and 2002 and with operating a motor vehicle under the influence in 2011. The complaint also indicated the parents' residence did not have electricity or water.

{¶ 3} Temporary custody was granted to the agency and on release from the hospital, B.F. was placed in a foster home. Father was established as the child's father after paternity testing. Both parents failed to appear at an adjudicatory hearing in January 2014, and the court found B.F. was abused and dependent based on the complaint.

{¶ 4} On January 5, 2015, the agency filed for permanent custody of the child, alleging that despite case plan services, the child could not be placed with either parent within a reasonable time. Prior to the permanent custody hearing, the child's mother voluntarily surrendered her parental rights. At the hearing, a magistrate heard testimony from the agency caseworker, the foster mother, the visitation supervisor and Father. The guardian ad litem prepared a report and was cross-examined by the parties. After considering the evidence, a magistrate granted permanent custody to the agency. After a hearing, the trial court overruled objections filed by Father and adopted the magistrate's decision.

{¶ 5} Father now appeals the trial court's decision to grant permanent custody of B.F. to the agency, raising the following sole assignment of error for our review:

{¶ 6} THE TRIAL COURT'S DECISION TO PLACE THE [CHILD] IN THE PERMANENT CUSTODY OF BUTLER COUNTY WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

{¶ 7} In his assignment of error, Father argues that the evidence presented at the

hearing demonstrates that it is in B.F.'s best interest to grant Father more time to reunify with the child.

{¶ 8} Before a natural parent's constitutionally protected liberty interest in the care and custody of his child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982); *In re E.G.*, 12th Dist. Butler No. CA2013-12-224, 2014-Ohio-2007, ¶ 6–7. Clear and convincing evidence is that which will produce in the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford,* 161 Ohio St. 469, 477 (1954); *In re McCann,* 12th Dist. Clermont No. CA2003-02-017, 2004-Ohio-283, ¶ 11.

{¶ 9} R.C. 2151.414(B)(1) states that a court may terminate parental rights and grant permanent custody of a child to a children services agency if it finds that the grant of permanent custody to the agency is in the child's best interest, and one of the following factors applies: (a) the child is not abandoned, orphaned, or has not been in custody of the agency for 12 of 22 months but nonetheless cannot be placed with either parent within a reasonable time or should not be placed with either parent, (b) the child is abandoned, (c) the child is orphaned, (d) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or (e) the child or another child in the custody of the parent from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in Ohio or another state.

{¶ 10} In this case, the child has been in the custody of the agency for 12 of 22 months, and this factor is not contested. Instead, appellant argues that the permanent custody was not in the child's best interest.

{¶ 11} When determining the best interest of a child at a permanent custody hearing,

the court must consider all relevant factors, including the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a)-(e).

{¶ 12} With regard to the first statutory factor, the trial court found that Father's contact with the child has been limited to weekly visits at the agency visitation center. The court found that in September 2014, Father was removed from the visitation schedule after he missed four visits in a row. The visitation schedule was not reestablished until February 2015 and the child initially cried and was upset at visits after they were reestablished. Since that time, Father has been visiting regularly, but visitation is supervised at the highest level. The court also considered the fact that the child has a younger sibling who was also removed from the parents' custody and is placed with an aunt in Florida, but that there was no evidence presented regarding any relationship between the two children.

{¶ 13} The court further found that B.F. has been in his current foster home since his original placement, for a period of over two years. The court found the child's needs are being met and he is very close to his foster sister, who was previously adopted by the foster mother. The foster mother is willing to adopt B.F. and is also willing to maintain contact with the child's biological family.

{¶ 14} The court also determined that the mother permanently surrendered her parental rights to B.F. and has not visited the child since that time. The court found that no evidence was presented regarding the parents' relationship with each other, but that Father testified that he allows mother to "crash" at his apartment.

{¶ 15} In considering the wishes of the child, the court indicated that it did not conduct an in camera interview due to the age and maturity of the child. The court further noted that the guardian ad litem recommended granting permanent custody to the agency. With regard to the custodial history of the child, the court found that the child has been in agency custody since September 6, 2013 and that the child has been in agency custody for more than12 of 22 months.

{¶ 16} In considering the next statutory factor, the court found that there is a clear need for a legally secure placement which cannot be achieved without a grant of permanent custody. The court indicated that B.F. is over two years old and has never lived in the home of a parent. The child was placed in foster care directly from the hospital and has been in that home since he was three days old. The court considered the case plans and the parents' lack of progress, including Father's positive drug screens and failure to complete the domestic violence sessions recommended in the initial evaluation. The court also indicated that on August 6, 2014, it was reported that Father had attended the majority of his mental health sessions, but by August 25, had stopped attending and was unable to be contacted by the therapist. Father reengaged in counseling in November 2014, continues to be involved,

and has been recommended to continue therapy.

{¶ 17} The court also considered Father's income and housing situation, finding that both were problematic. The court found that for most of the time the case was pending, Father did not have a stable place to live. He moved around from place to place with friends. Since May 2015, Father has been living in an apartment provided by Community Behavioral Health at no cost while he pursues disability benefits. Father testified that the mother and paternal grandmother occasionally spend the night in his apartment.

{¶ 18} The court found Father was injured on the job of a former employer in June 2014 and was not currently employed, although the exact nature and extent of the injury and condition were not presented to the court. Father indicated that he was in the process of applying for Worker's Comp and/or disability benefits. Father does not have transportation and his driver's license is suspended. Finally, the court found that no other individuals have requested a home study for placement of the child and no other custody motions are pending.

{¶ 19} After considering all of the evidence in light of the statutory factors, the court found, by clear and convincing evidence, that it was in B.F.'s best interest to grant permanent custody to the agency. This finding is supported by the record.

{¶ 20} As mentioned above, Father argues that it would be in the child's best interest to be in the custody of his father because there is a preference for keeping children in their homes. Father argues he was compliant with the services he understood and were requested in the case plan, he obtained housing and was doing well in visits with his son. Father contends that B.K. knows who he is and a relationship exists between the two, despite the fact that the child has been in foster care.

{¶ 21} "Every parental rights termination case involves a difficult balance between maintaining a natural parent-child relationship and protecting the best interests of a child." *In*

*re V.C.*, 8th Dist. Cuyahoga No. 102903, 2015-Ohio-4991, ¶ 55. A trial court is not required to experiment with the child's best interest in order to permit a parent to prove that he will be able to regain custody of the child. *In re C.T.L.A.*, 4th Dist. Hocking No. 13CA24, 2014-Ohio-1550, ¶ 51.

{¶ 22} In this case, the child was born with drugs in his system and has never been in the custody of Father. During the course of the case, Father was unable to maintain a stable residence, tested positive for drugs and lost visitation for a period of time due to missed visits. Father failed to complete domestic violence treatment and does not have reliable transportation or a steady source of income. The guardian ad litem expressed this lack of stability as a concern regarding Father's future behavior and ability to parent the child. Given these facts, we find no error in the trial court's determination that it was in the child's best interest to grant permanent custody to the agency rather than to allow additional time for reunification.

{¶ 23} Judgment affirmed.

S. POWELL and HENDRICKSON, JJ., concur.